**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| MADELINE M. MOREY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: ELH-17-2250 |
| CARROLL COUNTY, GOVERNMENT, et.al., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this employment discrimination case, plaintiff Madeline Morey filed suit against defendants "Carroll County Government" and the "Carroll County Board of Commissioners" (collectively, "Carroll County" or the "County"). ECF 1.[1] In a First Amended Complaint (ECF 17), Morey alleges retaliation, in violation of several statutes: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1981 ("§ 1981"); Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Section 504"); and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2014 Repl. Vol., 2017 Supp.), § 20-601 *et seq.* of the State Government Article ("S.G."). Plaintiff seeks both compensatory and punitive damages.

---

[1] Plaintiff sometimes refers to the Board of Carroll County Commissioners. *See*, *e.g.*, ECF 24-4 at 4. In Maryland, the County Commissioners are the "governing body" for a Code County and for a Commission County. *See* Maryland Code (2013 Repl. Vol.), § 1-101(f) of the Local Government Article. It would seem that the "Carroll County Government" is not a proper defendant. However, defendants have not moved to dismiss on this basis.

Defendants filed a pre-discovery, combined motion to dismiss in part and motion for summary judgment. ECF 21. The motion is supported by a memorandum of law (ECF 21-1) (collectively, the "Motion") and several exhibits. Plaintiff opposes the Motion (ECF 24, "Opposition"), supported by several exhibits. Defendants have replied. ECF 25 ("Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, I shall grant the Motion in part and deny it in part.

## I. Factual Background[2]

The County hired plaintiff on May 28, 2013, to serve as its "Director of the Department of Citizen Services." ECF 17, ¶ 16. Plaintiff's responsibilities included supervising 60 to 70 employees and overseeing "Transit"; the Aging and Disabilities Bureau; the Bureau of Housing; Children Services for Carroll County; and Coordinator with regard to the Americans with Disabilities Act. ECF 17, ¶¶ 17-18. A department within the Bureau of Housing, known as the Public Housing Authority, "receives federal funding from [the] U.S. Department of Housing and Urban Development ('HUD') to administer the Section 8 Housing Choice voucher program." ECF 21-4 (Affidavit of Danielle Yates, Chief of the County's Bureau of Housing and Community Connections), ¶¶ 3, 4. The federal funding is known as "Housing Assistance Payment ('HAP')." *Id.* at ¶ 4..

In September 2014, plaintiff received a complaint from an employee, Janet Boyd, who informed plaintiff that other employees "were engag[ing] in intentional racial discrimination and disability discrimination," which was allegedly in violation of Title VI, Title VII, and § 504. ECF 17, ¶¶ 19-20. Specifically, Ms. Boyd informed plaintiff that "'people who are of another race, in poverty or need accommodation for a disability [are] viewed as an annoyance' and were

---

[2] Given the posture of the case, the facts are largely derived from the First Amended Complaint (ECF 17).

denied County benefits under programs receiving federal financial assistance." *Id.* ¶ 21 (brackets in ¶ 21). Thereafter, plaintiff reported the complaints to the County's Human Resources Department ("HR"). *Id.* ¶ 23.

A month later, on October 2, 2014, "a former Bureau of Housing employee," Lena Bauerlein, informed plaintiff that "her coworkers, [particularly Rita Zimmerman], had created a hostile work environment in the Bureau . . . and that Ms. Bauerlein believed she had been discriminated against based on her religious beliefs (Buddhism)." *Id.* ¶ 24.[3] Again, plaintiff reported these complaints to HR. *Id.* ¶ 25. Thereafter, on October 27, 2014, "a County housing recipient" reported to plaintiff that County employees were discriminating against her "because of her race and because her Daughter is a disabled person under the meaning of the Americans with Disabilities Act ["ADA"]." *Id.* ¶ 26. Upon further investigation, plaintiff discovered that the housing recipient, who is Jewish, was asked to provide additional income documentation that "other non-Jewish [non-disabled,] housing recipients and County employees were not required to provide[.]" *Id.* ¶¶ 28-29. Plaintiff also discovered that Rita Zimmerman, the Deputy Director of Citizen Services, was ignoring the recipient's calls. ECF 17, ¶ 28.

Subsequently, at an unspecified time, but apparently prior to July 1, 2015, plaintiff made additional reports to HR, including: (1) Ms. Boyd had observed Bureau of Housing employees "failing to provide accommodations to people with disabilities and denying services to housing recipients based on [their] race"; (2) Ms. Boyd "was retaliated against for opposing discriminatory practices"; (3) Ms. Bauerlein was terminated because "she had complained about how staff recipients were being treated." *Id.* ¶¶ 31-34.

---

[3] As written, plaintiff has referred to Bauerlein as a "former" employee at the time she made her complaint. But, it would seem that Bauerlein was an employee of the County at the time of her discrimination complaint.

On July 1, 2015, in light of plaintiff's "excellent performance," defendants gave plaintiff a four-year contract extension, through June 30, 2019, along with a pay raise. *Id.* ¶¶ 35-36. Later that month, female members of plaintiff's staff complained to plaintiff that, under defendants' Grant Contingent Employment Policy (the "Policy"), females were treated "differently" from male employees, and "female County employees . . . earn[ed] less money than similarly situated male County employees." *Id.* ¶ 38. On July 29, 2015, upon discovering that the Policy did, in fact, cause female employees to earn less than male employees, *see id.* ¶ 39, plaintiff complained about the Policy to the County Administrator, Roberta Windham. *Id.* ¶ 40. The following day, July 30, 2015, plaintiff filed a written complaint with HR regarding the disparate treatment of the female employees. *Id.* ¶ 41.

Another County employee, Dorothy Miles, reported to plaintiff on August 19, 2015, that "employees under Plaintiff's supervision were creating a hostile work environment." *Id.* ¶ 42. Ms. Miles, who is Caucasian, is married to an African American male and has biracial children. *Id.* ¶ 43. Ms. Miles told plaintiff that, as a result of her marriage, employees Zimmerman and Loretta Pressimone, Ms. Miles's supervisors, were discriminating against her, "had made inappropriate racial comments," and were treating "County constituents differently based on race." *Id.* ¶¶ 43-44. On August 25, 2015, plaintiff notified HR of Ms. Miles's complaints, *id.* ¶ 45, and on September 16, 2015, plaintiff directly informed Kim Frock, the HR Director. *Id.* ¶ 46.

Plaintiff was terminated on September 17, 2015. *Id.* ¶ 47. Ms. Miles was subsequently terminated. *Id.* At the time of plaintiff's termination, Windham told plaintiff that "the County was 'planning a re-organization.'" *Id.* ¶ 49. And, the County told the Maryland Department of Labor, Licensing and Regulation, Division of Unemployment Insurance ("DLLR"), that plaintiff's position was "eliminated pursuant to reorganization." *Id.* ¶ 50. Moreover, the County

stated that plaintiff was terminated for "'no-cause.'" *Id.* ¶ 51. As a result, the County was not required to provide plaintiff with the opportunity to improve her work performance. *Id.* ¶¶ 54-55. Yet, plaintiff "was the only employee affected by the 'reorganization.'" *Id.* ¶ 61. Moreover, Frock, the HR Director, asserts in her Affidavit (ECF 21-6) that plaintiff "was terminated for reasons related to her job performance, namely her lack of accessibility and ineffective leadership." *Id.* ¶ 8.

On October 1, 2015, plaintiff filed a charge (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights. *Id.* ¶ 81.[4] She also asserts substantial compliance with the Maryland Local Government Tort Claims Act ("LGTCA"), Md. Code (2013, 2017 Supp.), §§ 5-301 *et seq.* of the Courts and Judicial Proceedings Article ("C.J."). ECF 17, ¶¶ 63-80.

## II. Legal Standards

Plaintiff alleges that defendants terminated her in retaliation for her "protected complaints about unlawful race discrimination" (ECF 17, ¶ 86), and because she opposed the County's discriminatory employment practices. ECF 17, ¶¶ 87, 107-110, 115-118. The claims are made under five statutes: Title VII, MFEPA, § 1981, Title VI, and § 504. Defendants seek dismissal in part and/or summary judgment as to each of plaintiff's retaliation claims. ECF 21.

In particular, defendants contend that, as to the MFEPA claim, plaintiff has failed to comply with the notice requirement under the LGTCA, C.J. § 5-304. Further, defendants argue that plaintiff "has failed to state a cognizable claim under Title VI" and under § 1981. ECF 21-1 at 2. In addition, defendants contend that plaintiff has failed to exhaust a portion of her Title VII claim. And, defendants posit that plaintiff "has not alleged and/or cannot prove all of the

---

[4] Plaintiff does not indicate whether she received a notice of right to sue.

elements of retaliation under any statute." ECF 21-1 at 2.[5]   And, defendants contend that plaintiff's claim for punitive damages is subject to dismissal.

## A.

"Motions to dismiss for failure to exhaust administrative remedies are governed by [Federal Rule of Civil Procedure] 12(b)(1) for lack of subject matter jurisdiction." *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 786 (D. Md. 2013) (quotation marks and citation omitted). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Pres. Ass'n v. The Cty. Comm'rs Of Carroll Cty.*, MD, 523 F.3d 453, 459 (4th Cir. 2008). A Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Clarke*, 962 F. Supp. 2d at 786 (quotation marks and citation omitted).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original); *see also Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). A factual challenge can assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Id.*

---

[5] As discussed, *infra*, to survive a motion to dismiss, plaintiff need not *prove* anything. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002). But, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009); *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

Notably, the court may take judicial notice of the existence and contents of EEOC proceedings "if necessary to decide issues like exhaustion of administrative remedies[.]" *Clarke*, 962 F. Supp. 2d at 787. But, "it may not take judicial notice of the *truth* of matters outside the challenged pleading." *Id.* (emphasis in *Clarke*).

**B.**

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a

"short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d

435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'"* *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman* ).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not

expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007).  However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'"  *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,* 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied,* 543 U.S. 979 (2004).

Accordingly, when resolving a Rule 12(b)(6) motion, a court may consider certain exhibits, without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).  In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ."  *Goines,* 822 F.3d at 166 (citations omitted); *see also U.S. ex rel. Oberg*, 745 F.3d at 136; *Anand*, 754 F.3d at 198; *Am. Chiropractic Ass'n*, 367 F.3d at 234; *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).  "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the

contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

## C.

As noted, defendants have moved to dismiss or, in the alternative, for summary judgment. A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). When, as here, the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion

under Rule 12(d) may occur, and the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C ALAN WRIGHT & ARTHUR MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed.) (hereinafter, "WRIGHT & MILLER"). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448-49; *see Putney v. Likin*, 656 F. App'x 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'" *Adams Housing, LLC v. City of Salisbury, Maryland*, 672 Fed. App'x 220, 222 (4th Cir. 2016) (citation omitted). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (hereinafter, "*Harrods*") (quoting *Evans v. Tech's. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, [he] cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing the affidavit requirement of former Rule 56(f)). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll*., 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961); *see also Dave & Buster's, Inc.*, 616 F. App'x at 561. But, the non-moving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961). The failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary," when the

"nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit'," and if the nonmoving party "was not lax in pursuing discovery." *Harrods*, 302 F.3d at 244-45 (quoting *First Chicago Int'l v. United Exchange Co., LTD*, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988)).

Plaintiff filed an affidavit (ECF 24-6), but not under Fed. R. Civ. P. 56(d). Although she challenges the summary judgment motion, she does not make clear that she is in need of discovery. Nevertheless, granting summary judgment before discovery "can be particularly inappropriate when a case involves complex factual questions about intent and motive." *Harrods*, 302 F.3d 248 (citations omitted).

In *McCray*, 741 F.3d 480, the Fourth Circuit considered whether the district court erred when it granted summary judgment to the defense in a Title VII case, before the plaintiff had an opportunity to conduct requested discovery. *Id.* at 483. The Fourth Circuit reiterated that discovery is appropriate when "the main issue" is "one of motive" and when "most of the key evidence lies in the control" of the party moving for summary judgment. *Id.* at 484. It determined that the plaintiff's Title VII claims required the plaintiff to show "that she was fired because of discriminatory reasons," and that such evidence was within the control of the MTA. *Id.* "Absent discovery," said the Court, the plaintiff lacked "adequate access to this evidence, and therefore no way to shield herself from a premature summary judgment motion." *Id.* It reasoned, *id.* at 483: "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." The Fourth Circuit concluded that summary judgment was premature under Rule 56(d). *Id.* at 481, 484.

In my view, given the posture of the case, the lack of any opportunity for discovery, and the relevance of issues such as motive, summary judgment would be premature. Moreover, in

the Reply (ECF 25), defendants clarify that "the majority" of their arguments "focus[] solely on these shortcomings of plaintiff' factual allegations and legal claims" to show that the claims "are not legally cognizable . . . ." *Id.* at 1. Therefore, I shall construe the Motion solely under Rule 12(b), not Rule 56.

### D.

In general, there are "two avenues" *at trial* by which a plaintiff may prove a violation of Title VII and other employment discrimination statutes. *Hill v. Lockheed Martin Logistics Mgmt.*, *Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc) (recognized in *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015), as *abrogated on other grounds by Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)); *see Love–Lane v. Martin,* 355 F.3d 766, 786 (4th Cir. 2004) (stating that "the *McDonnell Douglas* framework, developed for Title VII, has been used to evaluate race discrimination claims under the three statutes," *i.e.,* Title VII, § 1981, and § 1983); *see also*, *e.g.*, *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 263 n.* (4th Cir. 2008) ("[T]he *McDonnell Douglas* framework applies to discrimination claims under...§ 1981.").

The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Young v. United Parcel Serv., Inc.*, ____ U.S. ____, 135 S. Ct. 1338, 1345 (2015) (construing the Pregnancy Discrimination Act); *Guessous*, 828 F.3d at 216 (discussing the three steps of the *McDonnell Douglas* framework).

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish

an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff," who must prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant,"

and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11.  The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As noted, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731.  At the motion

to dismiss stage, these approaches merely serve to inform a court's evaluation of the allegations. *Cf. Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas* . . . .").

In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1162 (2016).

As the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal* and *Twombly*. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of *Twombly* is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods*, 855 F.3d at 648, the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a

motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies . . . ." The question at the motion to dismiss stage is whether the plaintiff has stated "a plausible claim for relief under Title VII . . . ." *Ciociola v. Balt. City Bd. of Sch. Commissioners*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016). Therefore, at a minimum, plaintiff must plead facts that make it plausible that she was subjected to retaliation as a result of engaging in protected activity.

### III. Discussion

To state a prima facie case of retaliation under each statute, plaintiff must aver that: (1) she engaged in protected activity; (2) the employer took an adverse action against her; and (3) the protected activity and the adverse action were causally connected. *See Boyer-Liberto v. Fontainbleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (*en banc*) (Title VII and § 1981); *Stennis v. Bowie State Univ.*, 716 Fed. App'x 164, 166 (4th Cir. 2017 (per curiam) (Title VII); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (Title VII and § 1981); *Love–Lane,* 355 F.3d at 786 (§ 1981); *Easley v. Bd. of Educ. of Prince George's Cty.*, No. 8:12-CV-02277-AW, 2012 WL 5829122, at *2 (D. Md. Nov. 15, 2012) (§ 504); *Bowman v. Baltimore City Bd. of Sch. Commissioners*, 173 F. Supp. 3d 242, 247 (D. Md. 2016) (Title VI); *Crockett v. SRA Int'l*, 943 F. Supp. 2d 565, 574 (D. Md. 2013) (MFEPA). In addition, under Title VI, a plaintiff must also prove a fourth element – that "the program or activity under which a plaintiff was allegedly subjected to discrimination received federal financial assistance." *Bowman*, 173 F. Supp. 3d at 247.

It is undisputed that plaintiff's termination on September 17, 2015, constitutes an adverse employment action. In general, defendants' arguments hinge on plaintiff's alleged failure to satisfy Title VII's exhaustion requirement; her failure to show that she engaged in protected

activity; and the failure to show that the protected activity and the termination were causally related.

I address each claim below, but not necessarily in the order presented by the parties.

### A. Title VI

In Count III of the Amended Complaint, plaintiff asserts a claim under Title VI of the Civil Rights Act of 1964. Defendants assert that plaintiff has filed to state a cognizable claim because the primary purpose of the federal financial assistance received by the County in regard to housing benefits is unrelated to employment. ECF 21-1 at 9.

Section 601 of Title VI provides that no person shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" because of the person's race, color, or national origin. 42 U.S.C. § 2000d–7. Title VI prohibits intentional discrimination and includes a private right of action for retaliation claims. *Rogers v. Bd. of Educ. of Prince George's Cty.*, 859 F. Supp. 2d 742, 747 (D. Md. 2012).

As noted, in regard to a retaliation claim under Title VI, the plaintiff must allege, *inter alia*, "receipt of federal funds by the defendant, and that this funding was received for the 'express purpose of creating jobs and maintaining existing ones.'" *Bowman*, 173 F. Supp. 3d at 247 (quoting *Rogers*, 859 F. Supp. 2d at 750). This requirement is predicated on § 604 of Title VI, as amended, 42 U.S.C. § 2000d-3.

Section 604 applies to private litigants and provides: "Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide

employment." *See Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 631 (1984) (stating that §

604 "limits the applicability of Title VI to 'employment practice[s] . . . where a *primary*

*objective* of the federal financial assistance is to provide employment.'") (Emphasis, brackets,

and ellipsis in *Darrone*); *see also Ingram v. Morgan State Univ.*, 74 F.3d 1232 (4th Cir. 1996)

(per curiam) (affirming dismissal of Title VI claim where plaintiff did not allege that defendant

received federal financial assistance for the primary purpose of employment or that she was the

intended beneficiary of any such assistance); *Trageser v. Libbie Rehab. Ctr. Inc.*, 590 F.2d 87, 89

(4th Cir. 1978) (stating that Title VI requires litigants to show that providing employment is a

primary objective of the federal aid defendants receive, or that the employment discrimination

complained of necessarily causes discrimination against the primary beneficiaries of the federal

aid); *Fordyce v. Prince George's Cty. Maryland*, 43 F. Supp. 3d 537, 545 (D. Md. 2014) ("[T]o

survive a motion for summary judgment under Section 604 of Title VI, a litigant must provide

facts [demonstrating] that: (1) the employer received Federal financial assistance for the primary

purpose of providing employment, or (2) the employment discrimination was against a primary

beneficiary of the federal financial assistance.").

Plaintiff argues that her Title VI retaliation claim is "directly authorized under the

Department of Housing's Title VI's implementing regulations," namely, 24 C.F.R. 1.4(c)(2).

ECF 24 at 25. The relevant portion provides:

> Where a primary objective of the Federal financial assistance is not to provide
> employment, but discrimination on the ground of race, color, or national origin in
> the employment practices of the recipient or other persons subject to this part 1
> tends, on the ground of race, color, or national origin, to exclude individuals from
> participation in, to deny them the benefits of, or to subject them to discrimination
> under any program to which this part 1 applies, the provisions of this paragraph
> (c) shall apply to the employment practices of the recipient or other persons
> subject to this part 1 to the extent necessary to assure equality of opportunity to,
> and nondiscriminatory treatment of, beneficiaries.

Defendants maintain that the program for which the County receives federal funding is directed at housing, not employment. *See* ECF 21-4 (Yates Affidavit). Eligible County citizens are the primary beneficiaries of the housing assistance. *Id.* Notably, plaintiff does not allege that defendants' receipt of federal funds for the housing program was for the primary purpose of providing employment *or* that she was a primary beneficiary of the federal assistance. *See Fordyce*, 43 F. Supp. 3d at 545. Plaintiff has not cited, nor has this Court found, any authority demonstrating that 24 C.F.R. § 1.4(c)(2) trumps § 604 of Title VI, or any of the controlling case law.

Title VI must be dismissed, for the reasons that follow.

First, plaintiff has failed to allege that the federal funding received by the County was for the primary purpose of providing employment. Plaintiff merely alleges: "Defendants operate a program or activity receiving federal financial assistance." ECF 17, ¶ 116. To support this claim, plaintiff alleges only that "housing recipients" were denied benefits and discriminated against based on their race and disability. *Id.* ¶¶ 22, 26-30, 32, 44. Thus, the federal program in issue was directed not at providing jobs, but at providing affordable housing. This is insufficient under Title VI. *See Mitchell v. N. Carolina Div. of Employment Sec.*, 76 F. Supp. 3d 620, 628 (E.D.N.C. 2014) (stating that, instead of providing employment, "the primary objective of the federal funding that the North Carolina Division of Employment Security receives is to assist the unemployed with unemployment benefits"), *aff'd*, 599 F. App'x 517 (4th Cir. 2015); *Mills v. State Highway Admin.*, No. PWG-13-3727, 2015 WL 72270, at *4 (D. Md. Jan. 5, 2015) (stating that "the primary objectives of the federal funds [from the Federal Highway Administration] are to provide roads for the public and to improve public safety, not to provide employment, which is incidental to providing roads.") (citation omitted); *Johnson v. Cmty. Coll. of Allegheny Cty.*,

566 F. Supp. 2d 405, 459 (W.D. Pa. 2008) (concluding that plaintiff "did not adduce sufficient evidence for a reasonable jury to conclude that the primary purpose of the federal funding was employment." Rather, the evidence showed that "the primary purpose of [the] federal funding was education . . . .").

Second, plaintiff was not a primary beneficiary of defendants' federal funding. Rather, she alleges only that the intended beneficiaries, *i.e.*, the housing recipients, endured discrimination. ECF 17, ¶¶ 22, 26-30, 32, 44; *see Proffitt v. Consolidation Coal Co.*, No. 77-2266, 1979 WL 61, at *3-4 (S.D.W. Va. June 27, 1979) (applying the limitation contained in § 604 of Title VI to the plaintiff's § 504 claim and granting dismissal, in part, because "plaintiff [was] not a member of [the] group himself" and thus not a primary beneficiary of the federal funding); *see also Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1235 (7th Cir. 1980) ("[T]o bring a private action under [Title VI], the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program.") (citations omitted).

Therefore, I shall dismiss the retaliation claim brought in Count III under Title VI.

## B. Section 504

In Count II, plaintiff alleges retaliation in violation of § 504 of the Rehabilitation Act of 1973, as amended. Section 504 provides: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The Fourth Circuit has said that, "to establish a violation of section 504, plaintiffs must prove that they have been discriminated against—that they were excluded from the employment or benefit due to discrimination solely on the basis of

the disability." *Sellers v. Sch. Bd. of City of Manassas,* 141 F.3d 524, 528 (4th Cir. 1998) (citations and internal quotation marks omitted).

Plaintiff's retaliation claim under § 504 centers on her allegations that: (1) on September 26, 2014, Ms. Boyd complained to plaintiff that individuals with a disability were "viewed as an annoyance" and denied housing benefits, ECF 17 ¶¶ 19-23; (2) on October 27, 2014, plaintiff received a complaint from a housing recipient who believed she was being discriminated against, in part, because her daughter was disabled, *id.* ¶¶ 26-29; and (3) plaintiff complained to defendants about retaliation against other employees who reported these discriminatory activities. *Id.* ¶¶ 31-34.

I shall assume, *arguendo*, that plaintiff's reports of the above incidents to HR qualified as engaging in protected activity. Even so, plaintiff has not adequately alleged a causal connection between such protected activity and her termination. Ultimately, to satisfy the causation element, a plaintiff must show that "the employer [took] the adverse employment action *because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original).

Ordinarily, there must exist "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 501 (4th Cir. 2005). Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse ... action'" often "'negates any inference that a causal connection exists between the two.'" *Id.* (citation omitted). And, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke,* 962 F. Supp. 2d at 790 (quoting *King v. Rumsfeld,* 328 F.3d 145, 151 n.5 (4th Cir. 2003)); *see Wilcoxon v. DECO Recovery*

*Mgmt., LLC*, 925 F. Supp. 2d 725, 732 (D. Md. 2013) (concluding that four months between the protected activity and alleged retaliatory conduct did not establish "temporal proximity"). In "cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Lettieri v. Equant, Inc.,* 478 F.3d 640, 650 (4th Cir. 2007) (citation omitted).

Plaintiff received complaints concerning disability discrimination as early as September 2014 (ECF 17, ¶¶ 19-20) and as late as October 2014. *Id.* ¶ 26. Plaintiff claims that she reported these matters to HR, but she does not specify when she did so. ECF 17, ¶¶ 31-34. Presumably, her complaints were close in time to the alleged occurrences. If so, her complaints to HR regarding disability discrimination occurred approximately eleven months prior to her termination on September 17, 2015. *Id.* ¶ 47. That is an amount of time "sufficiently long so as to weaken significantly the inference of causation." *Clarke*, 962 F. Supp. 2d at 790.

Moreover, when "look[ing] to the intervening period" of time for other evidence of "retaliatory animus," the record instead reflects that on July 1, 2015, plaintiff received from defendants a raise and a new four-year employment contract. ECF 17 ¶ 35. Thus, plaintiff has failed to allege that, in the eleven months between her complaints of disability discrimination and her termination, she was subject to retaliatory animus by defendants. *See Wilcoxon*, 925 F. Supp. 2d at 732-33 (concluding that although the plaintiff offered evidence of retaliatory animus in the intervening period, it was not sufficient to satisfy the causation element because there was "nothing to suggest that she was terminated because of her complaint.").

As such, the Section 504 claim in Count II is subject to dismissal, without prejudice to plaintiff's right to amend her claim within 14 days of the entry of the attached Order, adding

allegations of temporal proximity between the time of her complaints to HR and the termination of her employment.

## C. Section 1981

In Count I, plaintiff alleges a violation of 42 U.S.C. § 1981. Section 1981(a) provides: "All persons within the Jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . . as is enjoyed by white citizens." Section 1981(b) states: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.*

Like Title VII, 42 U.S.C. § 1981 prohibits, *inter alia,* "discrimination in employment on the basis of race." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551-52 (4th Cir. 2006); *see Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975) ("§ 1981 affords a federal remedy against discrimination in private employment on the basis of race"); *Nnadozie v. Genesis Healthcare Corp.*, ___ Fed. App'x ___, 2018 WL 1830935 (4th Cir. April 17, 2018), at *4. Section 1981(b) was enacted as part of the Civil Rights Act of 1991 in order to overrule legislatively the Supreme Court's holding in *Patterson v. McLean Credit Union,* 491 U.S. 164 (1989), and to ensure that § 1981 applied not "only to the formation of a contract" but also "to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." *Patterson*, 491 U.S. at 176-77; *see CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 449-51 (2008) (discussing post-*Patterson* enactment of § 1981(b)).

The framework for proof of a claim of employment discrimination under § 1981 is the same as the framework applicable to a Title VII claim. *See Guessous*, 828 F.3d at 217; *Boyer-Liberto*, 786 F.3d at 281; *see also Love–Lane,* 355 F.3d at 786 (stating, in case involving employment discrimination claim under Title VII, § 1981, and § 1983, that "the elements required to establish such a case are the same under all three statutes") (citing *St. Mary's Honor Ctr.*, 509 U.S. at 506 n.1). "Procedurally, however, Section 1981 claims are not subject to the same exhaustion and timeliness requirements as those asserted pursuant to Title VII." *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 673 (D. Md. 2013) (citing *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 291-92 (4th Cir. 2004)); *cf. Johnson*, 421 U.S. at 460 (stating that "the filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a § 1981 action.").

Accordingly, a plaintiff's claim for employment discrimination under § 1981 is not limited to factual allegations that the plaintiff exhausted through the EEOC's administrative process. "The timeliness of Section 1981 claims is instead governed either by state law (as to allegations of misconduct during the formation of an employment contract) or by the four-year statute of limitations established by 28 U.S.C. § 1658 (as to allegations of misconduct after the formation of the employment relationship)." *Sewell*, 956 F. Supp. 2d at 673.

In moving to dismiss plaintiff's § 1981 claim, defendants argue that the complaints of alleged discrimination fail to constitute protected activity. ECF 21-1 at 19-20. There are two categories of protected activities: (1) "opposition," and (2) "participation." *Equal Emp't Opportunity Comm'n v. Navy Fed. Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005). "[P]rotected oppositional activities may include staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities as well as complain[ts] ...

about suspected violations." *Id.* (citations and internal quotation marks omitted). Activities that constitute "participation" may include "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 259 (4th Cir. 1998); *see also* 42 U.S.C. § 2000e-3(a).

Under Title VII and § 1981, "[a] complaint is protected as opposition activity if it is a response to an employment practice that is, or that the plaintiff reasonably believes is, unlawfully discriminatory." *Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014); *see also DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) ("[T]he oppositional activity must be directed to 'an unlawful employment practice' under Title VII, 42 U.S.C. § 2000e-3(a)."). "Unlawful employment practices that an employee may oppose include practices that 'discriminate against an individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harmon v. Cumberland Cty. Bd. of Educ.*, 186 F. Supp. 3d 500, 506 (E.D.N.C. 2016) (quoting *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011)), *aff'd*, 669 F. App'x 174 (4th Cir. 2016). However, Title VII "is not a general bad acts statute," nor does it prohibit "private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII." *Bonds*, 629 F.3d 369 at 384.

In regard to § 1981, plaintiff's alleged opposition to racial discrimination under § 1981 centers around (1) Ms. Boyd's claim that housing recipients of "another race" were "viewed as an annoyance" and denied benefits, ECF 17, ¶¶ 19-23, 32; (2) a County housing recipient reported that she was subjected to racial discrimination and denied benefits, *id.* ¶¶ 26-31; and (3) Ms. Miles allegedly complained in August 2015 that she was discriminated against by other

employees because "she is married to an African American man and has [biracial] children." *Id.* ¶¶ 42-43, 45.[6]

Plaintiff's first two allegations of oppositional activity only involve complaints to HR regarding defendants' treatment of non-employees, namely, third-party housing applicants. Because these complaints were not in response to discriminatory *employment practices*, they do not constitute protected activity. *See Stennis v. Bowie State Univ.*, 236 F. Supp. 3d 903, 911 (D. Md. 2017) (concluding that a professor's opposition to alleged discrimination against homosexual and female students did not constitute opposition to a "perceived unlawful employment practice," and "it was not reasonable to believe that perceived discrimination against *students*—who are clearly not employees—violated [Title VII].") (emphasis in original), *aff'd in part, vacated in part*, 716 Fed. App'x 164 (4th Cir. 2017); *Harmon*, 186 F. Supp. 3d at 506 (stating that "an employee may oppose [] practices that discriminate against an individual with respect to [her] compensation, terms, conditions, or privileges of employment.") (internal quotation marks and citation omitted); *Cooper v. City of Fountain Inn*, No. CIV.A. 6:07-1262HFFB, 2007 WL 2736531, at *2-3 (D.S.C. Sept. 17, 2007) (concluding that the plaintiff's

_____

[6] Plaintiff also alleges that she reported defendants to HR for: (1) retaliating against other employees who had complained of disability discrimination, ECF 17, ¶¶ 30-32; and (2) discriminating against Ms. Bauerlein based on her religious beliefs. *Id.* ¶¶ 24-25. These allegations, however, fall outside of the scope of § 1981, and will not be considered in connection with this claim, because they do not involve discrimination based on race. *See Nnadozie v. Genesis Healthcare Corp.*, 2018 WL 1830935, at *4 (4th Cir. April 17, 2018) ("[A]t the very least, a Section 1981 claim must allege *race*-based discrimination.") (emphasis in original); *Woods v. City of Greensboro*, 855 F.3d 639, 645 (4th Cir.) ("Section 1981 protects all persons from racial discrimination in making and enforcing contracts.") (citation omitted), *cert. denied sub nom. City of Greensboro, N.C. v. BNT Ad Agency, LLC*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999) ("A § 1981 action, then, must be founded on purposeful, racially discriminatory actions . . . .") (citation omitted); *Bowling v. Humanim, Inc.*, JKB-16-3298, 2017 WL 713862, at *2 (D. Md. Feb. 22, 2017) ("[A] plaintiff bringing a claim . . . under § 1981 must allege that [she suffered discrimination] *because of her race*[.]") (citation omitted) (emphasis in original).

reporting of alleged sexual assault/harassment against her daughter did not qualify as opposition to an "unlawful employment practice" because the daughter was not an employee of the defendant, and further stating that "Title VII limits 'unlawful employment practices' to actions of employers taken against either 'employees' or 'applicants for employment.'") (quoting 42 U.S.C. § 2000e-2).

Given that plaintiff's first two allegations fail to qualify as protected activity, they do state a claim under § 1981.

However, plaintiff states a claim with respect to her third allegation – that, on August 25, 2015, she complained to HR that Ms. Miles was suffering discrimination at the hand of other employees because "she is married to an African American man and has [biracial] children." *See* ECF 17 ¶¶ 42-43, 45. Defendants admit investigating the alleged discrimination and subsequently implementing "several new policies and procedures." Frock Aff., ECF 21-6, ¶¶ 5-6. On September 17, 2015, less than one month after plaintiff complained to HR, plaintiff was terminated. ECF 17, ¶ 47.

In the light most favorable to plaintiff, her conduct qualifies as opposition to unlawful employment practices, because other employees were discriminating against the "conditions or privileges" of Ms. Miles's employment." Drawing all inferences in favor of plaintiff as the non-moving party, plaintiff has stated a claim of discrimination, in violation of § 1981.[7] *See Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111, 114 (5th Cir. 1986) ("§ 1981 provides a cause of action to a white spouse who alleges that [s]he was discriminated against in employment because of [her] marriage to a nonwhite."); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir.1986) ("We hold that section 1981 prohibits discrimination based upon an interracial

---

[7] *See* Section D(4), *infra*, as to the element of causation.

marriage or association . . . ."); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999) ("A white employee who is discharged because [her] child is biracial is discriminated against on the basis of [her] race . . . .").

## D. Title VII

### 1.

In Count I, plaintiff asserts a claim of retaliation under Title VII. Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see Young v. United Parcel Service, Inc.*, ____ U.S. ____, 135 S. Ct. 1338, 1344 (2015); *DeMasters v. Carilion Clinic, et al.*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014). It also prohibits an employer from retaliating against an employee because the employee filed a grievance or complaint regarding an employment practice that allegedly violated Title VII's antidiscrimination provision. *See* 42 U.S.C. § 2000e-3(a); *DeMasters*, 796 F.3d at 415. Of relevance here, Title VII states, in part, that an employer may not discriminate against an employee because she "has opposed any practice made an unlawful employment practice . . . , or because [s]he has made a charge." 42 U.S.C.A. § 2000e-3.

As to the allegations in paragraphs 19-34 of the Amended Complaint, defendants complain that plaintiff failed to exhaust her administrative remedies. Therefore, they move to dismiss for lack of subject matter jurisdiction. ECF 21-1 at 12.[8] In particular, defendants assert

---

[8] Defendants also contend that the retaliation claim under MFEPA is subject to the Title VII exhaustion requirement. ECF 21-2 at 12 n.25. *See Stennis*, 236 F. Supp. 3d at 909-10; *Allen*

that the Amended Complaint alleges discriminatory conduct between September 26, 2014 and October 27, 2014, which was not included in the EEOC charge. *See* ECF 17, ¶¶ 19-34. They also note that, under 29 C.F.R. § 1601.12(a)(3), an EEOC Charge must include "pertinent dates." ECF 21-1 at 16. As to the remainder of plaintiff's Title VII claim, defendants urge dismissal for failure to allege protected activity or, alternatively, a failure to allege causation. *See* ECF 21-1 at 18 *et seq.*

## 2. Administrative Exhaustion

Under Title VII, a plaintiff must file a charge of discrimination with the EEOC, or a comparable State agency, before filing suit in federal court. 42 U.S.C. § 2000e–5(f)(1); *see Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009); *see also Nnadozie*, 2018 WL 1830935, at *7. The charge must "describe generally the action or actions complained of," in order to provide the charged party with adequate notice. 29 C.F.R. § 1601.12(b); *see Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 670 (4th Cir. 2015) ("We recognize that a primary objective of exhaustion requirements is to put parties on notice of the allegations against them."); *Balas v. Huntington Ingalls Indus.*, Inc., 711 F.3d 401, 407 (4th Cir. 2013). The "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive

*v. Discovery Communications, LLC*, PWG-15-1817, 2016 WL 5404558, at *3 (D. Md. Sept. 28, 2016).

resolution of disputes.'" *Balas*, 711 F.3d at 407 (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). "Allowing [the EEOC] first crack at these cases respects Congress's intent . . . ." *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012).

An aggrieved person must file a Title VII complaint with the EEOC within 180 days of the alleged discrimination, except in a "deferral" jurisdiction, where the period is 300 days. *See* 42 U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Maryland is a deferral state. And, the Maryland Commission on Civil Rights is the applicable State enforcement agency. *See, e.g., Dewitt v. Clean Harbors Envtl. Servs., Inc.*, RDB-16-1705, 2017 WL 3116609, at *3 (D. Md. July 21, 2017).

The exhaustion requirement of Title VII functions as a jurisdictional bar in federal court. In *Balas*, 711 F.3d at 406, the Fourth Circuit said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." An aggrieved party who fails to comply with the applicable administrative procedures has failed to exhaust his administrative remedies, and is generally barred from filing suit. *See, e.g., Nnadozie*, 2018 WL 1830935, at *7; *Miles*, 429 F.3d at 491; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Failure to exhaust generally mandates dismissal. *See Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografo v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

Even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process. To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look only to the charge filed with that agency." *Balas*, 711 F.3d at 408; *see also Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation."); *Evans v. Tech.'s*

*Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."). Although courts "recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). Indeed, "liberal construction only stretches so far." *Nnadozie*, 2018 WL 1830935, at *7. Thus, courts are constrained by the four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof . . . .'" *Balas*, 711 F.3d at 407-08 (citations omitted).

However, "[t]he touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same . . . ." *Sydnor*, 681 F.3d at 595. The Court explained in *Sydnor*, 681 F.3d at 594: "[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Accord Southpeak Interactive Corp. of Del.*, 777 F.3d at 669; *see Calvert Grp., Ltd.*, 551 F.3d at 300; *Evans*, 80 F.3d at 963. On the other hand, the Fourth Circuit has said that "a plaintiff fails to exhaust [her] administrative remedies where ... [her] administrative charges reference different *time frames*, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506 (emphasis added); *see Nnadozie*, 2018 WL 1830935, at *7.

The Fourth Circuit's opinion in *Jones v. Calvert Grp.*, 551 F.3d 297, provides guidance. In that case, the plaintiff filed a charge with the Maryland Commission on Human Relations,

checking only the box for "retaliation." *Id.* She stated: "'I believe I am being forced to work in a hostile environment and subjected to differential treatment in retaliation for filing' [a prior] charge." *Id.*; *see id.* at 301. Plaintiff subsequently brought suit, alleging retaliation as well as race and sex discrimination, in violation of Title VII. *Id.* at 299. She also alleged age discrimination, in violation of the ADEA. *Id.* The defendant moved to dismiss under Rule 12(b)(6). *Id.* After converting the motion to dismiss to a motion for summary judgment, the district judge entered judgment in favor of the defendant, on the merits. *Id.* at 299-301.

The Fourth Circuit concluded that the plaintiff had failed to exhaust administrative remedies. *Id.* at 299. It reasoned, *id.* at 301: "The...charge alleged that [plaintiff] was being retaliated against because she had filed [a previous] charge; it did not allege that she was discriminated against based on her age, sex, or race. Indeed, she checked only the 'retaliation' box on her EEOC charge and left unchecked the boxes for 'age,' 'sex,' or 'race.'"

*Belyakov v. Medical Science & Computing*, 86 F. Supp. 3d 430, 440 (D. Md. 2015), is also instructive. In *Belyakov*, the plaintiff applied for a job with the National Institutes of Health through the defendant staffing firm. *Id.* at 432. When plaintiff did not get the job, he filed suit against the defendant, alleging age discrimination under the ADEA, as well as national origin discrimination and retaliation under Title VII. In granting summary judgment in favor of the staffing agency as to the national origin claim, the district judge said: "Belyakov did not check the box for national origin discrimination in his EEOC charge, nor did he claim national origin discrimination or allege any facts relating to his national origin . . . in the narrative portion of his EEOC charge." *Id.* at 440. Instead, the plaintiff "asserted only claims for, and alleged facts relating to, age discrimination in violation of the ADEA and retaliation in violation of Title VII . . . ." *Id.* Therefore, the court determined that the plaintiff failed to exhaust his national

origin claim. *Id.*; *see also Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 350 (D. Md. 2012) (finding that the plaintiff failed to exhaust her administrative remedies as to discrimination on the basis of age because she "did not check the box for discrimination based on age, and there is no reference to age discrimination in the narrative portion of the document"); *Talbot v. Foodservice, Inc.*, 191 F. Supp. 2d 637, 640 (D. Md. 2002) (same, for disability discrimination).

### 3. Plaintiff's EEOC Charge & Allegations Contained in Paragraphs 19-34

Plaintiff's EEOC Charge of October 1, 2015, alleges that she was discriminated against between November 25, 2014 and September 17, 2015. EEOC Charge, ECF 21-5 at 2. The form asks the complainant to identify the type of discrimination, and plaintiff checked only the box for retaliation. She did not allege a continuing violation.

The form also asks for the "Earliest Date(s) Discrimination Took Place." Plaintiff specified "11-25-2014." *Id.* In the area of the EEOC Charge dedicated to the "PARTICULARS" of her claim, plaintiff stated, *id.* (emphasis added):

> I. I began my employment . . . on May 28, 2013. My most recent position was Director, Citizen Services/ADAA Coordinator. *During the course of my employment I have opposed issues covered by EEOC statutes*, specifically, race discrimination, equal pay issues, disability related issues and religious discrimination which created a hostile work environment for the employees. *On September 17, 2015, as a result of my most recent complaints* reported to the employer in July through September 2015, I was advised I was discharged by Kim Frock, Human Resources Director, Roberta Windham, County Administrator and Commissioner Wantz.
>
> II. The reason given for discharge was reorganization.
>
> III. I believe I have been retaliated against in violation of Title VII . . . with respect to discharge.

As noted, the allegations contained within Paragraphs 19-34 of plaintiff's Amended Complaint (ECF 17) relate to incidents that occurred between September 26, 2014 and October 27, 2014. Specifically, on or about September 26, 2014, Ms. Boyd met with plaintiff, who

complained of racial and disability discrimination, and stated that certain employees viewed "people who are of another race, in poverty or need accommodation for a disability [are] viewed as an annoyance'" and were denied benefits under programs receiving federal financial assistance. *Id.* ¶¶ 19-21. Thereafter, on October 2, 2014, Ms. Bauerlein complained to plaintiff that she was being discriminated against because of her religious beliefs (Buddhism) and, on October 27, 2014, a County housing recipient reported to plaintiff that she was discriminated against based on race and because her daughter was disabled. *Id.* ¶¶ 24, 26-30. Plaintiff, in turn, reported each of these complaints to HR. *Id.* ¶¶ 23, 25, 31-34. Plaintiff alleges she was terminated, in part, because she reported these incidents. *Id.* ¶¶ 84-92.

In her Charge, plaintiff did not include the specific dates and facts that are outlined in the preceding paragraph. But, in her Opposition, plaintiff maintains that she properly exhausted her claims because she "expressly allege[d]" in the Charge that she engaged in protected activity prior to July 2015, such that the protected activity set forth in Paragraphs 19-34: (1) "was included in or 'reasonably related' to" her retaliation charge; or (2) would have been part of a reasonable investigation of her complaint. ECF 24 at 18-20 (citing *Sydnor, Va.*, 681 F.3d at 594) ("[S]o long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit.") (internal quotation marks and citations omitted).

In the "PARTICULARS" section of the Charge, plaintiff did assert that she had engaged in protected activity "during the course of [her] employment," which began in May 2013. And, she expressly stated that defendant fired her on September 17, 2015, "as a result of [her] most recent complaints reported to the employer in July through September 2015." *Id.*

To be sure, each of the allegations at issue occurred before November 25, 2014, the earliest date that the EEOC Charge alleges the discrimination occurred. *See* Charge, ECF 21-5 at 2. According to the Charge, plaintiff claimed she was retaliated against because of her activities between November 25, 2014 and September 17, 2015. But, plaintiff did specify that, during the course of her employment, she opposed other discriminatory conduct.

In *Nnadozie*, *supra*, 2018 WL 1830935, the Fourth Circuit determined that one of the plaintiffs failed to include any facts in the EEOC charge concerning discrimination on the basis of national origin. Therefore, the Court concluded that the Title VII claim had not been exhausted, and the trial court properly granted summary judgment to the employer. *Id.* at *7. As noted, the Court said that "liberal construction only stretches so far." *Id.*

Here, in paragraphs 19-34 of ECF 17, plaintiff does not seek to introduce a claim for an unrelated form of discrimination, such as discrimination based on age, sex, or religion. Rather, the provisions in the paragraphs at issue are consistent with plaintiff's assertion in the EEOC charge that, during the course of her employment, she "opposed issues covered by EEOC statutes, specifically, race discrimination, equal pay issues, disability related issues and religious discrimination which created a hostile work environment . . . ." ECF 21-5 at 2.

I am satisfied that the factual allegations contained in Paragraphs 19-34 are "reasonably related" to plaintiff's allegations in the Charge of retaliation. However, even if Paragraphs 19-34 are "reasonably related" to plaintiff's retaliation charge, the allegations in Paragraphs 19-23 and 26-30 do not amount to "protected activity," because plaintiff opposed discrimination against non-employees of the County. And, of import here, Title VII is directed to unlawful *employment practices*. In other words, to the extent that plaintiff alleges that she opposed discriminatory conduct against non-employees, the conduct is not within the ambit of Title VII.

In *Stennis v. Bowie State Univ.*, 716 Fed. App'x 164 (4th Cir. 2017) (per curiam), the Fourth Circuit considered, *inter alia*, the dismissal of a complaint that included a Title VII retaliation claim brought by a professor who had complained that her students were subjected to sex discrimination. The Fourth Circuit concluded that the professor failed to allege that she engaged in protected activity. It said, in part, *id.* at 167: "'Title VII is not a general bad acts statute . . . and it does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII.'" (quoting *Bonds v. Leavitt*, 629 F.3d at 384). In other words, the protected activity "must be directed to 'an unlawful employment practice' under Title VII." *DeMasters*, 796 F.3d at 417 (citation omitted). Moreover, even if Paragraphs 24-25 and 31-34 constituted "protected activity," plaintiff does not allege causation, due to the time lapse between the protected activity and her termination, as discussed previously. *See supra* Part II.

### 4. Plaintiff's Remaining Title VII Allegations

Plaintiff's allegations under Title VII include that, in July and August of 2015 (after receiving her contract extension), she complained to HR that: (1) Defendants' Grant Contingent Classification Policy caused female staff to earn less money than their male counterparts, ECF 17 ¶¶ 37-41; and (2) Ms. Miles suffered discrimination from other employees because "she is married to an African American man and has [biracial] children," *id.* ¶¶ 42-43, 45. Soon after, plaintiff was terminated. These allegations set forth a claim of retaliation under Title VII.

First, as discussed in reference to plaintiff's § 1981 claim, her complaints to HR regarding racial discrimination against Ms. Miles qualify as protected activity. Moreover, plaintiff's complaints regarding the Policy also qualify, because she could "reasonably believe" that defendants' Policy constituted an "unlawful employment practice," as it purported to

discriminate on the basis of sex and caused female employees to earn less than their male counterparts. *See* ECF 17, ¶¶ 37-41; *Pettis*, 592 F. App'x at 160 (Under Title VII and § 1981, "[a] complaint is protected as opposition activity if it is a response to an employment practice that is, or that the plaintiff reasonably believes is, unlawfully discriminatory."). Specifically, plaintiff alleged that under the Policy female employees were paid for 38 hours during a holiday week, while "Facility and Roads" employees, who were all male, were paid for 40 hours during a holiday week. *Id.* ¶ 39.

Next, to demonstrate a causal connection, there must be "some degree of temporal proximity" between the protected activity and adverse employment action. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). Plaintiff must also allege that the employer had knowledge of the protected activity prior to the occurrence of the adverse action. *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010) (citing *Causey v. Balog*, 162 F.3d 795, 803-04 (4th Cir. 1998)).

Plaintiff allegedly reported the alleged discriminatory effects of the Policy directly to Roberta Windham, County Administrator, on July 29, 2015 and, in writing, to HR on July 30, 2015. ECF 17, ¶¶ 40-41. Moreover, on August 25, 2015, plaintiff reported to HR the alleged discrimination against Ms. Miles. *Id.* ¶ 45. Then, on September, 17, 2015, less than two months after complaining about the Policy, and less than one month after the Miles complaint, plaintiff was terminated. The decision to terminate plaintiff was made at a meeting of the County Board of Commissioners, and in the presence of Kimberly Frock, defendants' HR Director. Frock Aff., ECF 21-6 ¶¶ 7-8. Thus, defendants acquired knowledge of plaintiff's protected activity and terminated her within a relatively short period of time. Drawing all inferences in favor of the non-moving party, plaintiff has adequately pleaded causation.

## E. MFEPA

Plaintiff may bring an employment discrimination claim under MFEPA, S.G. §§ 20-601 *et seq.*, provided that plaintiff furnished the requisite notice, as required by the Local Government Tort Claims Act, C.J. §§ 5-301 *et seq.* Section 5-304 of the LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim . . . is given within [180 days] after the injury." C.J. § 5-304.[9] The notice must "be in writing and shall state the time, place, and cause of the injury." *Id.* Moreover, for Carroll County, the notice "shall be given in person or by certified mail . . . to the county commissioners or county council." *Id.*

Generally, "notice is a condition precedent to the right to maintain an action for damages, and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action." *Renn v. Bd. of Comm'rs of Charles Cty.*, Md, 352 F. Supp. 2d 599, 603 (D. Md. 2005). In *Penn*, the court said, *id.* (internal quotation marks and citations omitted):

> The purpose of the notice requirement is to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation, i.e., while the evidence was still fresh and the recollection of the witnesses was undiminished by time, sufficient to ascertain the character and extent of the injury and its responsibility in connection with it.

Thus, failure to satisfy the notice requirement may be fatal to a plaintiff's claim. *See Rios v. Montgomery Cty.*, 386 Md. 104, 127-28, 872 A.2d 1, 14 (2005) (stating that a claim is "fatally flawed" if the notice requirement is not satisfied); *Ross v. Prince George's Cty.*, MD, DKC 11-

---

[9] The LGTCA was amended and now provides that, for injuries occurring after October 1, 2015, claimants must provide notice "within 1 year after the injury." C.J. § 5-304. However, plaintiff was terminated on September 17, 2015. Because her injury arose before October 1, 2015, she is subject to the 180 day notice requirement.

1984, 2012 WL 1204087, at *4 (D. Md. Apr. 10, 2012) ("Plaintiff's Failure to Comply with the LGTCA's Notice Requirement is Fatal to His State Law Claims").

Although notice is a condition precedent to maintaining a suit for damages, "strict compliance with the notice provisions of the LGTCA is not always required; substantial compliance may suffice." *Renn*, 352 F. Supp. 2d at 603 (internal quotation marks and citations omitted). Substantial compliance is satisfied "[w]here the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute." *Id.* (internal quotation marks and citations omitted). It "requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Id.* (internal quotation marks omitted). In other words, "substantial compliance is such communication that provides . . . requisite and timely notice of facts and circumstances giving rise to the claim." *Id.* at 603-04 (internal quotation marks and citations omitted).

In the context of this case, C.J. § 5-304(2)(c)(2) requires notice to be given to the Carroll County Board of Commissioners or the Carroll County Council. According to plaintiff, the Board appointed the County Attorney to serve as its counsel. ECF 17, ¶ 69. In 2015, Timothy Burke was the County Attorney, and he represented the Board. *Id.* ¶ 70. Plaintiff insists in her Opposition that she substantially complied with the notice requirement because her attorney sent a letter to Mr. Burke, the County Attorney, on October 30, 2015, titled "Request for Preservation of Evidence." *See* ECF 21-2. The letter indicated that counsel was "retained to represent the

interests" of plaintiff, and her counsel sought preservation of the requested evidence "in the event that this case proceeds to litigation and would be admissible at trial. *Id.* at 2.[10]

Plaintiff also argues that she substantially complied with the LGTCA by serving defendant with the EEOC Charge between October and December 2015. ECF 17, ¶ 66. The Charge identified the time, place, and cause of her injury. *Id.* ¶ 76; ECF 24 at 22.

Defendants maintain that the EEOC Charge is insufficient because: (1) "it does not express any intent to file suit for unliquidated damages" and; (2) it "was provided to the EEOC and not to [defendants]." ECF 21-1 at 7-8. More specifically, defendants argue that, under Maryland law, "an EEOC charge does not constitute notice under the LGTCA." *Id.* (citing *Hansen v. City of Laurel*, 420 Md. 670, 25 A.3d 122, 126 (2011); *Royster v. Gahler*, 154 F. Supp. 3d 206, 224 (D. Md. 2015)).

The County became aware of plaintiff's EEOC Charge well within the 180 days in which plaintiff was required to provide notice. In fact, on December 15, 2015, the County provided its Position Statement to the EEOC regarding plaintiff's claims. ECF 24-4. The Position Statement demonstrates that defendants hired Kimberly L. Limbrick to represent them "in connection with [Plantiff's] Charge of Discrimination" and that, upon an internal inquiry, defendants determined that Plaintiff's "termination was due solely to her own ineffective job performance." *Id.* at 3.

Presented with a similar situation, a judge of this court said in *Nelson v. City of Crisfield*, L-10-1816, 2010 WL 4455923, at *2 (D. Md. Nov. 5, 2010):

> [T]he EEOC notice was [provided to defendant] within the 180–day timeframe . . . ., provided the identity of the claimant, the time and place of the event, the nature of the claim, and the Plaintiff's intent to pursue litigation. While [plaintiff] did not technically comply, it seems clear that the purposes of the

---

[10] Plaintiff also alleges that her lawyer sent another notice to Burke on February 3, 2016. ECF 17, ¶ 77. However, defendants assert that they have no record of such a letter. ECF 21-1 at 9 n.15; *see also* ECF 21-3 (Affidavit of Burke, ¶ 4).

statute were satisfied in this instance. The [defendant] had notice of the exact nature of [plaintiff's] claim at a time when it could conduct its own investigation. In fact, the EEOC notice specifically advised the [defendant] to preserve its personnel and other records. The Court therefore deems [plaintiff] in substantial compliance with the LGTCA, and finds that her claims are not barred on this basis.

Moreover, defendants' reliance on *Hansen* and *Royster* is misplaced. As plaintiff notes, the court in *Hansen* did not "decide whether [the plaintiff's] conduct complied with the [LGTCA] notice provision." 420 Md. at 673, 25 A.3d at 124. Rather, it ruled that his failure to "plead expressly in his complaint satisfaction of the LGTCA notice provision" doomed his claim. *Id.* at 672. Moreover, although *Royster* determined that plaintiff's notice to the EEOC "is clearly not sufficient to constitute substantial compliance, as the EEOC is not associated with the [defendant] in any way," 154 F. Supp. 3d at 224, in that case there was no allegation that the defendant had actually been served with the plaintiff's EEOC charge and no evidence that the defendant received actual notice from the EEOC within the notice period.

In contrast, in this case, the EEOC Charge provided defendants with "requisite and timely notice of facts and circumstances giving rise to the claim," the critical requirement to establish substantial compliance. *Renn*, 352 F. Supp. at 603-04. Therefore, plaintiff substantially complied with the notice requirement, and may bring suit under the LGTCA, to the extent appropriate.

## IV. Punitive Damages

Defendants moved to dismiss plaintiff's claim for punitive damages, arguing that because Carroll County is a local governmental entity, it "may not be liable for punitive damages." ECF 21 at 25 (quoting C.J. § 5-303(c)(1)); *see* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government,

government agency or political subdivision) . . . . ”); *Barnes v. Gorman*, 536 U.S. 181 (2002) (holding that punitive damages are not available in Title VI or § 504 lawsuits).

Plaintiff failed to oppose defendants' argument. *Cf. Cox v. SNAP, Inc.*, 859 F.3d 304, 308 n.2 (4th Cir. 2017) (“'If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.'”) (quoting *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995)).

I agree with defendants. Therefore, the claim for punitive damages shall be dismissed.

## V.    Conclusion

For the reasons set forth above, defendants' Motion, construed as a motion to dismiss, is granted in part and denied in part. An Order follows.


Dated: May 3, 2018                                        _____/s/_____
                                                                    Ellen L. Hollander
                                                                    United States District Judge